UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RAHUL RAHUL,

     Petitioner,

v.

WARDEN, ADELANTO ICE
PROCESSING CENTER DESERT
VIEW FACILITY, et al.,

     Respondents.

Case No. 5:26-cv-02993-KES

ORDER DENYING THE PETITION

## I.    INTRODUCTION

Rahul Rahul ("Petitioner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging his detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). Respondents have answered the Petition ("Answer" at Dkt. 14), and Petitioner has replied ("Reply" at Dkt. 18). The parties have consented to the jurisdiction of the Magistrate Judge. (Dkt. 15.) For the reasons explained below, Petitioner has not demonstrated that the bond hearings held in February and April 2026 violated his

1

constitutional rights or any federal law.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    Entry and Release on Recognizance (2024).

Petitioner is a native and citizen of India.  (Pet. at 3 ¶ 5.)  Petitioner converted from Hinduism to Christianity, and he states that, on account of his religion, he was threatened and attacked in India by members of the RSS and BJP, Indian political groups.  (Pet. at 6 ¶ 19.)

On January 20, 2024, Petitioner entered the United States near Tecate, California.  (Pet. at 6 ¶ 19.)  He was charged as removable under INA § 212(a)(6)(A)(i) as present without admission and placed in removal proceedings.  (Pet. at 6 ¶ 19.)  He applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  (Pet. at 6 ¶ 19.)

On July 2, 2024, ICE released Petitioner on an Order of Release on Recognizance ("ORR") after determining he was neither a danger nor a flight risk. (Pet. at 7 ¶ 20.)  For the next 14 months, he attended ICE check-ins, maintained a stable residence, obtained an Employment Authorization Document and a California commercial driver license, worked lawfully as a DoorDash driver, and committed no crimes.  (Pet. at 7 ¶ 20.)

### B.    Re-Detention (September 2025).

On September 19, 2025, Petitioner's ORR was revoked and he was re-detained by ICE.  (Pet. at 7 ¶ 21.)  The Petition does not contain any facts about the ORR revocation or how or where Petitioner was taken into custody.

### C.    Filing of Prior Habeas Petition and Grant of Relief (January-February 2026).

About four months after Petitioner detained, on January 15, 2026, he filed a counseled habeas petition in this Court.  Rahul v. Warden, No. 5:26-cv-209-FLA-KES (C.D. Cal.) ("Rahul I").  That petition raised three claims:

Ground One: Petitioner's detention was "unreasonably

2

prolonged" and "punitive," which violated the Fifth Amendment Due Process Clause and Zadvydas v. Davis, 533 U.S. 678 (2001).

Ground Two: Petitioner was entitled to a "constitutionally adequate individualized custody determination" before ICE reversed its prior decision to release him on his own recognizance.

Ground Three: Petitioner's detention was "arbitrary, excessive, and unnecessary," which violated the Fifth Amendment's Due Process clause.

(Rahul I, Dkt. 1 at 4-6.)  Respondents answered the petition and admitted that Petitioner was entitled to a bond hearing as a member of the Bond Eligible Class certified in Maldonado Bautista v. Santacruz, 813 F. Supp. 3d 1084 (C.D. Cal. 2025).  (Rahul I, Dkt. 10.)

On February 13, 2026, the Court granted ground two of the petition and ordered Respondents to "provide Petitioner with an individualized bond hearing before a neutral immigration judge pursuant to 8 U.S.C. § 1226(a) within seven (7) days of the date of this Order."  (Rahul I, Dkt. 16 at 1 ¶ 2 (order accepting report and recommendation).)

**D.     First Bond Hearing (February 2026).**

On February 20, 2026, a bond hearing was held pursuant to this Court's order in Rahul I.  (Pet. at 7 ¶ 21.)  Respondents lodged an audio recording of this hearing, which the Court has reviewed.  (See Dkt. 17.)

Petitioner's counsel stated the following facts to the IJ.  Petitioner had had "no brushes with the law" and was detained in "a raid … of some sort."  (Feb. Bond Hearing Audio at 2:45-3:00.)  He had entered the United States illegally in January 2024.  (Id. at 4:00-4:30.)  His brother and sister-and-law were also living in the United States; his brother was also in removal proceedings but had been released on bond.  (Id. at 4:50-5:15.)  The IJ asked if Petitioner's sister-in-law had legal status, and Petitioner's counsel was not sure.  (Id. at 5:15-40.)  Petitioner

3

himself stated that he did not live with his sponsor (the address provided in filings), but instead in the same city (Fontana, CA) with his brother.  (Id. at 6:20-7:55.)[1] Petitioner's counsel stated Petitioner had applied for asylum, withholding of removal, and relief under the CAT.  (Id. at 8:25-9:00.)  The IJ noted that some or all of this relief would likely be subject to the CLP bar.[2]  (Id. at 9:00-9:45.) Petitioner inquired about the burden of proof, and the IJ stated the burden was on Petitioner, not the government, in a hearing under § 1226(a) like this one.  (Id. at 22:50-24:20.)

The immigration judge ("IJ") ultimately denied bond.  (Pet. at 7 ¶ 21.)  The IJ's written order stated as follows:

> IN TRO BOND PROCEEDINGS: FLIGHT RISK.  The Court makes this determination because [Petitioner] entered the United States illegally two years ago, and has no familial ties in the United States with status.  And, the ties that he does have, are friends of [Petitioner], which do not give him more secure avenues for status in the United States.  [Petitioner's] sponsor is of unknown relation to him, and states that [Petitioner] can live at an address in Fontana,

---

[1] Petitioner's counsel indicated that his first language is Hindi but waived the use of an interpreter after the IJ indicated that a Hindi interpreter was not available.

[2] This appears to be a reference to the "Circumvention of Lawful Pathways" rule, which provides, "[N]oncitizens who cross the southwest land border or adjacent coastal borders without authorization after traveling through another country, and without having (1) availed themselves of an existing lawful process, (2) presented at a port of entry at a pre-scheduled time using the CBP One app, or (3) been denied asylum in a third country through which they traveled, are presumed ineligible for asylum unless they meet certain limited exceptions."  DHS, *Fact Sheet: Circumvention of Lawful Pathways Final Rule* (May 11, 2023), https://www.dhs.gov/archive/news/2023/05/11/fact-sheet-circumvention-lawful-pathways-final-rule (last accessed June 25, 2026).

California, but [Petitioner] does not wish to live there, and wishes to live elsewhere, but has not provided evidence of that address.

The Court recognizes some positives here: that [Petitioner] has checked in twice if ICE [sic] and had previously been released on his own recognizance.  And, [Petitioner] waited to work in the United States until he had authorization, as a DoorDasher.  [Petitioner] also had a license to drive.

However, the Court notes that [Petitioner's] application for relief is speculative given the clear applicability of the CLP bar.  Thus, in the totality, the Court finds despite the sponsor's high income, that a bond is not warranted here.

(Answer Ex. A / Dkt. 14-1; see also Bond Hearing Audio at 13:15-22:50 (IJ's oral findings of fact).)  Petitioner reserved his right to appeal  (Answer Ex. A / Dkt. 14-1.)

**E.     Conclusion of Prior Habeas Case (March-April 2026).**

On February 27, 2026, the parties filed a joint status report stating, "On February 20, 2026, Petitioner received an individualized bond hearing before a neutral Immigration Judge pursuant to 8 U.S.C. § 1226(a), in compliance with this Court's Order.  The Immigration Judge denied bond. … To the extent the remaining grounds challenged the lack of a custody determination, those claims are likewise moot in light of the bond hearing that has been conducted.  The parties therefore respectfully submit that no further relief is required from this Court at this time." (Rahul I, Dkt. 18 at 2-3.)

However, on March 16, 2026, Petitioner filed an ex parte application for a temporary restraining order ("TRO") and preliminary injunction. (Dkt. 19.)  The TRO application argued that Petitioner "remain[ed] detained … despite overwhelming evidence that he is neither a danger to the community nor a flight risk, and despite the availability of a fully documented release plan." (Id. at 3.)

The application argued that the "bond hearing he received on February 20, 2026, did not cure the due process problem" because the "Immigration Judge did not identify any evidence that [Petitioner] is dangerous" or "concrete evidence that he is likely to abscond," instead "focus[ing] on speculative factors such as his manner of entry, the absence of family members with lawful status, his sponsor relationship, and perceived uncertainty regarding [his] address." (Id. at 5.)  The application sought "immediate release" or "in the alternative … a new bond hearing before a neutral adjudicator at which DHS bears the burden of proving by clear and convincing evidence that [Petitioner] is either a danger to the community or a flight risk." (Id. at 4.)

On April 22, 2026, the Court struck the TRO application, finding that it was untimely and that the "parties' Joint Status Report states Petitioner received an individualized bond hearing and no further relief is required." (Dkt. 20.)  The Court entered judgment for Petitioner on ground two of the petition and dismissed the other grounds as moot.  (Dkt. 21.)

**F.    Second Bond Hearing and Removal Order (April 2026).**

After Petitioner had been in detention for about six months, on April 9, 2026, a second bond hearing was held.  (Pet. at 7 ¶ 21.)  Respondents lodged an audio recording of this hearing, which the Court has reviewed.  (See Dkt. 17.)

The IJ noted that, unlike the bond hearing in February 2026, this time the government bore the burden of proving danger or flight risk by clear and convincing evidence.  (Apr. Bond Hearing Audio at 2:10, 4:30-40.)  Government counsel stated that they were not arguing Petitioner was a danger, but only a flight risk.  (Id. at 2:10-2:20.)  Government counsel recited the facts previously found by the IJ in February 2026 and essentially argued that nothing had changed.  (Id. at 2:20-4:30.)

The IJ asked Petitioner's counsel whether anything had changed, and counsel stated that he had filed 90 pages of documentation showing that Petitioner

6

lives with his brother and sister-in-law, and that his brother had been released on bond. (Id. at 4:30-7:10.)  Counsel stated that Petitioner's brother and sister-in-law were also asylum-seekers without lawful status in the United States.  (Id. at 4:30-7:10, 8:50-9:15.)  After some discussion of the evidence and application of the Guerra factors, Petitioner's counsel argued that the government had not shown that alternatives to detention, such as supervised release, monitoring, or a monetary bond, were insufficient to secure Petitioner's appearance at future hearings.  (Id. at 9:15-10:55.)  The IJ responded, "The merits hearing is this afternoon.  So there isn't going to be much other opportunity to appear."  (Id. at 10:55-11:15.)  The IJ also discussed what he perceived to be weaknesses in Petitioner's requests for asylum and/or relief from removal, although he noted, "I haven't made a decision yet, I haven't even heard his testimony…."  (Id. at 11:15-12:50.)  He noted that the "weighing of the factors is substantially different now that I have a hearing in the afternoon," because even if he granted bond, Petitioner would remain in custody as a practical matter until he could post bond, which would likely occur after the merits hearing.  (Id. at 14:20-14:50.)  At that point, the IJ reasoned, the flight risk analysis would change materially if Petitioner had been ordered removed from the United States.  (Id. at 14:50-16:40.)

Ultimately, the IJ again denied bond, making the following findings:

> IN RODRIGUEZ BOND PROCEEDINGS[3]: The Court finds the Department has established that [Petitioner] is a flight risk such that no bond is appropriate.  Though the Court recognizes here, the Department bears the burden of proof, the Court finds the Department has met its burden to demonstrate [Petitioner] is a flight risk by clear and convincing evidence.  The same concerns noted in the Court's

---

[3] See generally Rodriguez v. Robbins, 804 F.3d. 1060 (9th Cir. 2015), rev'd sub nom. Jennings v. Rodriguez, 138 S. Ct. 830 (2018).

prior bond order in TRO-based bond proceedings, have not been addressed, except to note that the address where [Petitioner] claims to wish to reside at has been provided in Fontana, California.  And, [Petitioner's] relationship to his sponsor, has been established--a friend of [Petitioner's] father.

Compounding the risk of flight, [Petitioner's] merits hearing was in the afternoon of the bond hearing, where the Department had filed a motion to pretermit based on a failure to establish governmental unwillingness and inability, the applicability of the circumvention of lawful pathways bar, and the ability for [Petitioner] to internally relocate, which further highlighted the speculative nature of [Petitioner's] application.  Thus, the Court finds [Petitioner] to be a flight risk such that no bond is appropriate.

(Answer Ex. B / Dkt. 14-2; see also Bond Hearing Audio at 14:50-17:00 (IJ's oral findings of fact).)  Petitioner reserved the right to appeal (Answer Ex. B / Dkt. 14-2.)

Later on the same day as the second bond hearing, on April 9, 2026, the same IJ ordered Petitioner removed to India.  (Answer Ex. C / Dkt. 14-3 (IJ's order).)

Petitioner has appealed both the bond order and the removal order to the Board of Immigration Appeals ("BIA").  (Pet. at 2 ¶ 3; id. at 7 ¶ 21; Answer Ex. D / Dkt. 14-4;.)

### G.    Present Habeas Case.

Petitioner filed the present Petition on June 1, 2026  (Dkt. 1.)  The Petition challenges both "custody hearings Petitioner received on February 20, 2026 and April 9, 2026" as "constitutionally inadequate."  (Pet. at 2 ¶ 3.)  The Petition raises the following claims:

Ground 1: "Inadequate Bond Hearings and Prolonged Detention":

"Petitioner's detention is now prolonged and of indefinite duration pending a multi-month BIA appeal; the hearings did not place the burden on the Government by clear and convincing evidence; and the denials rested on speculation.  Under Mathews [v. Eldridge, 424 U.S. 319 (1976)], a new and adequate hearing—or release—is required."  (Pet. at 9-10 ¶ 29; see also id. at 2 ¶ 3 (arguing the BIA appeal is "of indefinite duration, rendering his detention prolonged")).)

Ground 2: "Detention Not Reasonably Related to a Legitimate Purpose": "Petitioner poses no danger and no genuine flight risk: he has no criminal history, was previously released and complied for over a year, has a verified residence and sponsor, holds work authorization, and has documented medical needs.[4]  Where alternatives to detention plainly suffice, continued confinement is excessive and arbitrary in violation of substantive due process."  (Pet. at 10 ¶ 31.)

Ground 3: "Detention Under the Wrong Statutory Authority (Not Previously Litigated) (8 U.S.C. § 1226(a); Administrative Procedure Act ["APA"], 5 U.S.C. § 706(2))": "To the extent Respondents purport to hold Petitioner under § 1225(b)(2) as an 'applicant for admission' ineligible for bond, that authority does not exist on these facts and was never adjudicated in [Rahul I]."  (Pet. at 10 ¶ 33.)

The Petition seeks the following relief: (a) "order Petitioner released on the conditions of his prior release on recognizance, subject to reasonable supervision"; or (b) "in the alternative, order Respondents to provide a constitutionally adequate bond hearing before a neutral adjudicator within seven days, at which the Government bears the burden of proving by clear and convincing evidence that Petitioner is a danger or flight risk, and at which alternatives to detention and ability to pay are considered."  (Pet. at 12 ¶¶ 2-3.)

Respondents answered the Petition on June 8, 2026.  (Answer at 1.)

_____

[4] The only fact alleged in the Petition regarding Petitioner's medical needs is that he "has documented chest related medical needs."  (Pet. at 7 ¶ 22.)

Petitioner replied on June 16, 2026.  (Reply at 1.)

## III.    DISCUSSION

### A.    Exhaustion of Administrative Remedies.

Respondents argue that the Court "should deny the Petition because Petitioner has not exhausted his administrative remedies."  (Answer at 4.) Petitioner argues that exhaustion would be futile as to Grounds 1 and 2 because "the agency lacks jurisdiction to adjudicate constitutional claims," and would be futile as to Ground 3 because the agency's position is settled under Matter of Q. Li, 29 I&N Dec. 66 (BIA 2025) and Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025).  (Pet. at 6 ¶¶ 17, 18.)  He also argues that "each additional day of unlawful detention is irreparable harm warranting waiver."  (Pet. at 6 ¶ 18.)

Where a petitioner denied bond under § 1226(a) has not exhausted his administrative remedies by completing an appeal with the BIA, "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused."  Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011).  However, in this context, the exhaustion requirement is prudential, rather than jurisdictional, and can be waived.  See generally Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) (citing Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007)).

The Court assumes, without deciding, that waiver of the prudential exhaustion requirement is appropriate in this case.  Even if waiver is appropriate, Petitioner has not demonstrated that he is entitled to relief on the grounds raised in the Petition, for the reasons discussed below.

10

**B.** **Petitioner is Not Entitled to Relief on Ground 1, Because He Has Not Shown that Due Process Requires Any Additional Procedures Beyond What He Was Provided.**

### 1. Legal Standards.

#### a. Due Process generally.

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V.  The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693.

The fundamental requirements of due process are that a person be afforded notice and opportunity to be heard "at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976).  "[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." Perez Bueno v. Janecka, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026).  To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (c) the countervailing government interest. Mathews, 424 U.S. at 335.

#### b. Bond hearings under § 1226(a).

The text of § 1226(a) itself is silent as to which party bears the burden of proof at a custody redetermination hearing and the quantum of evidence necessary to satisfy that burden.  The BIA and DHS have "interpreted § 1226(a) to place

11

'[t]he burden ... on the [noncitizen[5]] to show to the satisfaction of the [IJ] that he or she merits release on bond.'" Al-Sadeai v. ICE, 540 F. Supp. 3d 983, 988 (S.D. Cal. 2021) (quoting In re Guerra, 24 I&N Dec. 37, 40 (BIA 2006)).

In Rodriguez Diaz, the Ninth Circuit rejected a noncitizen's argument that due process required the government to bear the burden of proof by clear and convincing evidence, finding that the existing procedures under § 1226(a) "sufficiently protected Rodriguez Diaz's liberty interest and mitigated the risk of erroneous deprivation." 53 F.4th at 1029. However, this decision "did not 'foreclose all as-applied challenges to § 1226(a)'s procedures' because 'due process is a flexible concept that varies with the particular situation.'" Nola v. DHS, No. 26-cv-02180-MBK, 2026 WL 1330294, at *7 (C.D. Cal. May 13, 2026) (quoting Rodriguez Diaz, 53 F.4th at 1202, 1213). District courts in the Ninth Circuit have found it appropriate, as a matter of due process, to place the burden on the government to prove danger and/or flight risk by clear and convincing evidence in some situations, typically doing so when: (a) "ordering the release of noncitizens who had been illegally detained"; or (b) "where the Government had erroneously denied the petitioner a bond hearing for months." Nola, 2026 WL 1330294, at *7 (collecting cases).

### 2.    Discussion.

Although Petitioner attempts to frame Ground 1 as a due process claim, it is not entirely clear what additional procedure(s) he believe due process requires. Regarding the second Mathews factor, Petitioner argues that the "risk of erroneous

---

[5] This order generally uses the term noncitizen rather than alien. See Avilez v. Garland, 69 F.4th 525, 527 n.1 (9th Cir. 2023) ("[U]se of the term noncitizen has become a common practice of the Supreme Court . . . . [In addition,] [t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed,' … while the word noncitizen, which is synonymous … avoids such connotations. Thus, noncitizen seems the better choice.").

12

deprivation is high" because "the bond orders identified no evidence of dangerousness or concrete evidence of flight and placed the practical burden on Petitioner, whereas due process requires the Government to prove by clear and convincing evidence that the noncitizen is a danger or flight risk at a prolonged-detention hearing." (Pet. at 9 ¶ 28.)

To the extent Petitioner is arguing that there was no "concrete" evidence or insufficient evidence to support the IJ's flight risk finding, this is discussed further below under Ground 2. To the extent Petitioner is arguing that due process required a shifted or higher burden of proof, these arguments are unconvincing.

a.      April 2026 Bond Hearing Under Rodriguez.

At this hearing, the IJ explicitly stated that he was placing the burden of proof on the government to prove flight risk by clear and convincing evidence. (Answer Ex. B / Dkt. 14-2; Bond Hearing at 2:10, 4:30.) Courts generally "accept that the [immigration court] 'applied the correct legal standard' if the [immigration court] 'expressly cited and applied [the relevant caselaw] in rendering its decision.'" Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024) (citing Mendez-Castro v. Mukasey, 552 F.3d 975, 980 (9th Cir. 2009)). The fact that the IJ asked the parties what had changed since the February 2026 bond hearing is insufficient to overcome the presumption that the IJ was following the legal standard that he expressly cited. Petitioner has not pointed to anything else in the record indicating that the IJ improperly shifted the burden of proof to Petitioner at the April 2026 bond hearing.

b.      February 2026 Bond Hearing Under § 1226(a).

To the extent Petitioner's challenge to the earlier, February 2026 bond hearing has not been mooted by the later bond hearing, he has not convincingly explained why, as a matter of due process, the government should have born the burden of proof by clear and convincing evidence at this hearing.

In his Reply, he states that he "invokes the prolonged-detention doctrine

13

under … the line of cases culminating in Rodriguez Diaz and Diouf II, which applies before a final order when detention has extended for a substantial period of uncertain additional duration." (Reply at 9.)  He argues his detention will be prolonged because "his case is now on appeal before the BIA" and "BIA appeals routinely remain pending for six to eighteen months or longer…." (Reply at 10.)

In Diouf II, the Ninth Circuit held that "an individual facing prolonged immigration detention under 8 U.S.C. § 1231(a)(6) is entitled to release on bond unless the government establishes that he is a flight risk or a danger to the community." Diouf v. Napolitano, 634 F.3d 1081, 1082 (9th Cir. 2011). However, as explained in Rodriguez Diaz, the line of circuit precedent including Diouf II has largely been overruled by the Supreme Court. See Rodriguez Diaz, 53 F.4th at 1199-1201. Rodriguez Diaz also explicitly rejected a prolonged detention argument similar to the one Petitioner is making here, reasoning:

> The first Mathews factor, Rodriguez Diaz's private interest, weighs in his favor. Because, by the time of the district court decision, Rodriguez Diaz was detained for fourteen months following his first bond hearing, we will assume that his detention qualifies as "prolonged" in a general sense. … But it is important not to overstate the strength of Rodriguez Diaz's showing under the first Mathews factor, either. … [I]n evaluating Rodriguez Diaz's interests under the first prong of the Mathews analysis, we cannot simply count his months of detention and leave it at that. We must also consider the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order. Indeed, as the government points out, by Rodriguez Diaz's (and the dissent's) logic, § 1226(a) would be unconstitutional as to most any [noncitizen] who elects to challenge a removal order, given the amount of time such a

14

typically challenge takes [sic].

Rodriguez Diaz, 53 F.4th at 1207-08 (footnote omitted).  The Ninth Circuit found that the procedural protections offered by § 1226(a)—such as "the right to seek an additional bond hearing if his circumstances materially change," "the right to appeal to the BIA," and federal habeas review over "errors of law" under the Martinez standard discussed below—were sufficient to satisfy due process.  Id. at 1209-10.

In sum, Petitioner has not shown that he is entitled to relief on Ground 1.

**C.** **Petitioner is Not Entitled to Relief on Ground 2, Because He Has Not Shown that the IJ Committed Legal Error or Abused His Discretion.**

Petitioner argues that his detention is "excessive and arbitrary in violation of substantive due process."  (Pet. at 10 ¶ 31.)  He argues that "civil immigration detention is permissible only to serve the non-punitive purposes of securing appearance and protecting the community," and his detention violates "substantive due process" because it "serves neither purpose."  (Reply at 12.)

Since the IJ found that Petitioner's detention did serve the purpose of securing his appearance—because the IJ found him to be a flight risk—this claim is really asking this Court to review the IJ's findings.  As discussed further below, this Court's review of the IJ's findings is for legal error or an abuse of discretion.

**1.    Legal Standard.**

The Ninth Circuit has summarized the legal standard IJs apply in making bond determinations as follows:

> To determine whether [a noncitizen] is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent. … The nine factors an IJ "may" consider "include any or all of the following:"
>
> (1) whether the [noncitizen] has a fixed address in the United

15

States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen's] manner of entry to the United States.

Martinez v. Clark, 124 F.4th 775, 783 (9th Cir. 2024) (quoting In re Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). These considerations are often referred to as the "Guerra factors." "An [IJ] has broad discretion in deciding the factors that he or she may consider in custody redeterminations," and he or she "may choose to give greater weight to one factor over others, as long as the decision is reasonable." Guerra, 24 I. & N. Dec. at 40.

In Martinez, the Ninth Circuit held that the "application of the 'dangerousness' standard is a reviewable mixed question" of law and fact, despite statutory limitations on the review of "discretionary" decisions, because "[e]ven though what constitutes 'dangerousness' is malleable and involves agency discretion, … this is still a legal standard so long as federal courts can 'assess whether an IJ correctly applied the statutory standard to a given set of facts." Id. at 783 (quoting Wilkinson v. Garland, 601 U.S. 209 (2024)).

However, the Ninth Circuit held that "the district court's review of the … 'dangerousness' determination is for abuse of discretion," not de novo. Id. at 779-80; see also id. at 784 (noting that this "deference reflects Congress's decision to cabin judicial review in removal proceedings"). "Under an abuse of discretion

16

standard, '[courts] cannot reweigh evidence ... [but] can [only] determine whether the BIA applied the correct legal standard.'" Id. at 785 (quoting Konou v. Holder, 750 F.3d 1120, 1127 (9th Cir. 2014)).  The Ninth Circuit further explained:

> Generally, in the absence of any red flags, we take the BIA at its word.  For example, "[w]hen nothing in the record or the BIA's decision indicates a failure to consider all the evidence," we will rely on the BIA's statement that it properly assessed the entire record. Cole v. Holder, 659 F.3d 762, 771 (9th Cir. 2011).  We do not require the BIA to "discuss each piece of evidence submitted." Id. Similarly, we accept that the BIA "applied the correct legal standard" if the BIA "expressly cited and applied [the relevant caselaw] in rendering its decision."  See Mendez-Castro v. Mukasey, 552 F.3d 975, 980 (9th Cir. 2009).  But when there is an indication that something is amiss, like if the BIA "misstat[es] the record" or "fail[s] to mention highly probative or potentially dispositive evidence," we do not credit its use of a "catchall phrase" to the contrary.  Cole, 659 F.3d at 771-72.

Martinez, 124 F.4th at 785 (finding "no such red flags" where "[a]t the outset of its decision, the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that [the petitioner was] a danger to the community," and where the decision noted but was not convinced by the petitioner's history of rehabilitation).

Because the same Guerra factors are used to assess both flight risk and dangerousness, district courts have applied the Martinez standard in reviewing an IJ's finding of flight risk as well.  See, e.g., Restrepo v. Noem, No. 26-cv-01735-AJR, 2026 WL 1047688, at *6 (C.D. Cal. Mar. 23, 2026); Miri v. Bondi, No. 26-cv-00698-MEMF-MAR, 2026 WL 622302, at *9 (C.D. Cal. Mar. 5, 2026).

"Given the significant liberty interest at stake for noncitizens in immigration

detention and the weak or nonexistent governmental interest in continued detention without adequate process, courts in this and other districts have found due process violations where IJs abuse discretion in bond determinations." Gimenez v. Hernandez, No. 2:26-cv-00966, 2026 WL 1156075, at *6 (W.D. Wash. Apr. 29, 2026) (collecting cases, including Ortega-Rangel).

**2.    Discussion.**

Petitioner argues, "Manner of entry and perceived weakness of asylum claims are not concrete evidence that a noncitizen who complied with all conditions of release for over a year will abscond.  Conspicuously absent from the order is any evidence—let alone clear and convincing evidence—that Petitioner ever failed to appear for a proceeding, violated a reporting requirement, absconded from supervision, or committed a crime." (Reply at 5.)  In his Reply, Petitioner expands on his argument that the IJ's reliance on the perceived weakness of his asylum claim was improper, arguing:

> The transcript of the April 8, 2026 proceedings exposes the constitutional defect at the heart of this case with unusual clarity: the Immigration Judge announced on the record, before ruling, that the existence of the same-day merits hearing substantially changed his flight-risk analysis.  That admission—in the adjudicator's own words—forecloses any argument that the April 9 bond denial rested on an individualized, evidence-based assessment of flight risk.  It did not.  It rested on a prediction about the merits.

(Reply at 1-2.)  He argues this was evidence of the IJ's "bias" and a "structurally defective process," which warrant his release from custody rather than a new bond hearing.  (Reply at 4-5.)

The noncitizen's "manner of entry to the United States" is a factor the IJ may consider.  Martinez, 124 F.4th at 783 (quoting Guerra, 24 I. & N. at 40).

Whether an IJ may properly rely on the perceived weaknesses of a

18

noncitizen's arguments against removal is less straightforward.  DHS regulations state, "Consideration by the Immigration Judge of an application or request of a [noncitizen] regarding custody or bond under this section shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding."  8 C.F.R. § 1003.19(d).  However, the BIA has held that "an IJ 'may consider the likelihood that relief from removal will be granted in determining whether [a noncitizen] warrants a bond' based on the rationale that a noncitizen who likely faces inevitable removal may be less likely to appear at future removal hearings."  Padilla Paz v. Hernandez, --- F. 3d ----, No. 2:26-cv-01394, 2026 WL 1413096, at *7 (W.D. Wash. May 15, 2026) (quoting Matter of R-A-V-P-, 27 I. & N. Dec. 803, 805 (B.I.A. 2020)).

District courts have found an IJ's reliance on this factor to be an abuse of discretion in some situations.  In Padilla Paz, for example, the district court reasoned:

> Here, the IJ states Petitioner's applications for relief were denied and she was ordered removed and she has appealed her removal order.  But "[w]hile it might be rational to draw such conclusion based on the specific facts presented in a particular case, the IJ did not explain how the relative strengths or weaknesses of Petitioner's claims for relief outweighed the specific circumstances presented in this case."  Soriano [v. Hernandez], --- F.Supp.3d at ----, No. 26-cv-00900, 2026 WL 969764, at *5 (W.D. Wash. Apr. 10, 2026).  The IJ noted Petitioner's significant family connections and roots in the San Francisco community but then "concluded without explanation that Petitioner's challenges in establishing relief automatically supported finding Petitioner a '[extremely] poor bail risk.' " Id.
>
> The IJ provided no rationale for the conclusion that, under

Petitioner's circumstances, she would try to flee rather than appear in immigration court to pursue claims for relief from removal proceedings, even if such claims -- having been denied by an IJ and currently on appeal to the BIA -- might be considered weaker for that reason. Id.

Padilla Paz, 2026 WL 1413096, at *7-8. Other courts have found that an IJ cannot rely exclusively on "a noncitizen's unlawful status" because "every individual who appears before an [IJ] for custody redetermination lacks lawful status," and thus this "violates both § 1226(a)'s requirement of an individualized hearing and fundamental due process principes." Lemus Crispin v. Bondi, No. 1:26-cv-191, 2026 WL 768859, at *5 (E.D. Va. Mar. 18, 2026) (citing Argueta-Portillo v. Bondi, et al., 1:26-cv-122, Dkt. No. 16 (E.D. Va. Mar. 2, 2026)). Similarly, in Restrepo, the district court held that an IJ's "exclusive reliance on the March 9, 2026 removal order to find that Petitioner posed a flight risk constitute[d] a categorical denial of bond to any [noncitizen] who is subject to a removal order and violate[d] Petitioner's right to an individualized determination." 2026 WL 1047688, at *6.

However, in the present case, the factual record and the IJ's stated rationale differ materially from those cases. While the IJ noted that Petitioner's applications for relief from removal were unlikely to succeed, he also relied on: (a) Petitioner's illegal entry into the United States; (b) the fact that he had been in the United States for only 2 years; (c) his lack of familial ties in the United States that might entitle him to reside permanently in the United States in the future; and (d) the fact that Petitioner had not explained the nature and length of his relationship to his sponsor. (Answer Ex. A / Dkt. 14-1 (February 2026 bond denial order); Answer Ex. B / Dkt. 14-2 (April 2026 bond denial order).) These are all factors an IJ can properly consider as part of an individualized flight risk analysis. See Martinez, 124 F.4th at 783 (quoting Guerra, 24 I&N Dec. at 40).

Even if reasonable minds might disagree about whether Petitioner should have been released on bond, Petitioner has not demonstrated legal error or an abuse of discretion. Accordingly, he has not shown that relief is warranted on Ground 2 of the Petition.

### D. Petitioner is Not Entitled to Relief on Ground 3.

Petitioner argues he is detained "under the wrong statutory authority," in violation of 8 U.S.C. § 1226(a) and the APA. (Pet. at 10 ¶ 33.) He argues, "To the extent Respondents purport to hold Petitioner under § 1225(b)(2) as an 'applicant for admission' ineligible for bond, that authority does not exist on these facts and was never adjudicated in [Rahul I]." (Pet. at 10 ¶ 33.)

In Rahul I, the Court found that Petitioner was a member of the Bond Eligible Class certified in Maldonado Bautista v. Santacruz, 813 F. Supp. 3d 1084 (C.D. Cal. 2025), meaning that he is not properly held in mandatory detention without a bond hearing under § 1225(b)(2). (Rahul I, Dkt. 13, 16.) While Respondents' Answer in this case does not explicitly state whether or not Petitioner is being held as an "application for admission" under § 1225(a), it does state, "Petitioner remains free to request a bond hearing before an Immigration Judge to seek his release from immigration detention." (Answer at 4.) This is consistent with a detainee held under § 1226(a). Petitioner therefore has not shown that he is entitled to relief on Ground 3.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that the Petition is **denied**.

DATED:   June 29, 2026

_Karen E. Scott_
KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

21